**In re Gerald SCHAAL and Susan V. Schaal, Debtors.**

**Bankruptcy No. TX 88–17 F.**

United States Bankruptcy Court,
W.D. Arkansas,
Texarkana Division.

Sept. 22, 1988.

Claude S. Hawkins, Jr., Ashdown, Ark., trustee.

Deborah J. Groom, Asst. U.S. Atty., Ft. Smith, Ark., for the U.S. and Farmers Home Admin.

## MEMORANDUM OPINION

ROBERT F. FUSSELL, Chief Judge.

Before the Court is an Objection to the Confirmation of the debtors' first amended plan of reorganization filed by the United States. An evidentiary hearing was held on June 6, 1988, and briefs were filed by the parties thereafter, concerning the issues raised at the confirmation hearing. Specifically, the Farmers Home Administration (FmHA) objected to the debtors' proposed six percent (6%) loan rate for a term of thirty (30) years on loans from the FmHA secured by the debtors' real estate, cattle and farm equipment.

### Jurisdiction

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). The following constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### Findings of Fact

1. A schedule indicating the various notes executed between the debtor and FmHA and applicable interests rates was introduced into evidence. The schedule indicated the following loans and contract interest rate:

| May 8, 1987 | 11% |
| May 8, 1987 | 4.5% |
| May 8, 1987 | 4.5% |
| June 14, 1971 | 7.25% |
| January 9, 1974 | 5% |
| September 23, 1983 | 5% |
| April 29, 1985 | 8.5% |
| April 29, 1985 | 5.25% |

2. The Court credits the testimony of Richard Johnson, County Supervisor of FmHA, in the following areas:

(a) The debtors qualify for the Limited Resource Loan Program of the FmHA.[1]

(b) Commercial lenders in the area are making loans secured by real estate at approximately 11%.

(c) FmHA is currently providing loans secured by real estate at approximately 9% per annum.

1. See 7 U.S.C. § 1934(a) (1983) and 7 C.F.R.

### Conclusions of Law

The issue before this Court is what interest rate should be applied to a debt in a chapter 12 farmer reorganization plan. In effect, the debtors argue for the contract rate, while FmHA contends that the market rate for commercial lenders is the appropriate rate.

The Court has considered the cases briefed by the attorneys. In *United States v. Neal Pharmacal Co.*, 789 F.2d 1283 (8th Cir.1986), the court held that the prevailing market rate would be applied to payment of a tax priority claim. While in *In re Monnier Bros.*, 755 F.2d 1336 (8th Cir. 1985), the court applied the contract rate to an oversecured creditor, as it was the rate agreed upon during "arm's length negotiations."

*In re Doud*, 74 B.R. 865 (Bankr.S.D.Iowa 1987) and *In re Kesterson*, 94 B.R. 561 (Bankr.W.D.Ark.1987), both consider the question of interest rates for FmHA loans. In *Doud*, the court applied the contract rate for the majority of the notes, while applying a market rate on the other notes. The *Doud* court emphasized the importance of determining the discount rate on a case-by-case basis and based its decision on "the fact that the debtors have borrowed under loan programs designed to provide opportunities to low equity farmers at congressionally-mandated low interest rates obviates the need for calculating the need for discount rate using a market rate approach." *Doud* at 871.

■ The Honorable Lee M. Jackwig provided a thoughtful analysis of the appropriate market rate when applied to FmHA loans in a chapter 12 case. *Doud* at 868–70. Judge Jackwig applied the yield on treasury bonds of the appropriate maturity plus a 2% "risk adjustment" to arrive at a prevailing market discount rate. *Id.* This Court adopts this determination of market rate, in principle; however, this determination is not necessary for the case *sub judice*.

§§ 1941.4(h) and 1943.4(h) (1988).

In *Kesterson*, the Honorable Mary Davies Scott also had the opportunity to analyze the discount interest rate as applied to FmHA loans. The debtors' amended plan reflected the loan rate that was obtainable under the FmHA's limited resource loans. Judge Scott ordered that if the debtors qualify for the limited resource loan, and agreed to the regulations for yearly review of the loan, with possible adjustments, then the court would approve the amended plan. In *Kesterson*, the court did not determine an alternative market interest rate.

The determination of the interest rate to be applied must be viewed in light of FmHA's purpose of providing credit to farmers. *Curry v. Block*, 541 F.Supp. 506, 511 (S.D.Ga.1982) *aff'd Curry v. Block*, 738 F.2d 1556 (11th Cir.1984). The FmHA lending programs have been characterized as forms of social welfare and that the purpose of the programs is to assist the underprivileged farmer. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 735, 99 S.Ct. 1448, 1462, 59 L.Ed.2d 711 (1979).

■■■■ After considering the applicable case law, the Court concludes based on the record evidence that:

1) the testimony reflects that the debtors may be eligible for the FmHA limited resource loan program,

2) the interest rates in this program would be most advantageous to the debtors,

3) both parties in their briefs have expressed agreement to the use of the limited resource loan program,

4) this Court rejects the United States' contention that it is entitled to the commercial lender rate,

5) this Court rejects the debtors' argument that the average contract interest rate should be applied.

6) the Court finds in this proceeding that the most appropriate alternative interest rate is the current market rate charged by FmHA to borrowers in instances where the loan is to be secured by real estate. At the date of the confirmation hearing, the current market rate being charged by FmHA on similar loans to borrowers is 9% per annum.

Furthermore, this Court determines that the appropriate interest rate must be determined on a case-by-case basis.

An Order consistent with this Memorandum Opinion will be issued of even date.

### ORDER

■■■■ Based on the oral findings of fact and conclusions of law dictated into the record on September 13, 1988, the debtors are required to modify their plan as follows:

1. The debtors are to file an application for the FmHA Limited Resource Loan Program.

2. If approved, the debtors will be subject to all rules and regulations of the program including yearly review.

3. If debtors do not qualify in any year under the Limited Resource Plan, then the interest rate of 9% per annum, which is FmHA's current interest rate being charged to borrowers on loans to be secured by real estate as collateral, shall be applicable during the duration of the plan.

4. FmHA has a security interest in post petition proceeds from the sale of cattle and poultry; however, under the equities of the case the chapter 12 debtor will be allowed to withhold ordinary farming and living expenses as projected in their plan and to make the payments as called for in the plan.

■■■■ However, the trustee in making payments under the plan, in order to protect FmHA's security interest shall first make payment of administrative expenses, next payments to FmHA and other creditors under the plan shall be entitled to this payment under the plan. Also, proceeds provided from other secured creditors shall be credited in a like manner under the plan as to priority of payments.